UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

HOFFMANS TRADE GROUP LLC,                        Chapter 7
                                                 Case No. 13-11662-REL
                          Debtor

_____

MARC S. EHRLICH, AS TRUSTEE FOR
HOFFMANS TRADE GROUP LLC,

                          Plaintiff              Adv. Pro. No.15-90038

            v.

MCLANE GLOBAL, JORDAN LACCETTI,
and MICHAEL COAKLEY

                          Defendants.

_____


## MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION
## FOR SUMMARY JUDGMENT PURSUANT TO BANKRUPTCY RULE 7056


Dated:  September 7, 2016

**DEILY & GLASTETTER, LLP**

By:     Leigh A. Hoffman, Esq.
        *Attorneys for Chapter 7 Trustee*
        8 Thurlow Terrace
        Albany, New York 12203
        Tel:  (518) 436-0344
        Fax:  (518) 436-8273
        Email:  lhoffman@deilylawfirm.com

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                           <u>Page</u>

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986) ……………………………………          3

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317(1986) …………………………………………….          3

<u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986) …………...          3

<u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986) ………………………………          3

<u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253 (1968) …………………….          3

<u>Musso v. Ostashko</u>, 468 F.3d 99 (2006) …………………………………………………          4

<u>Taylor v. Standard Gas & Elec. Co.</u>, 306 U.S. 307 (1939) ……………………….................          4

<u>HBE Leasing Corp. v. Frank</u>, 48 F.3d 623 (2d. Cir. 1995)  ………………………………          4

<u>Kelleran v. Andrijevic</u>, 825 F.2d 692 (2d. Cir. 1987) …………………………………….          4, 5

<u>Sure-Snap Corp. v. State Street Bank & Trust Co.</u>, 948 F.2d 869 (2d Cir. 1991) …………          4

<u>Pepper v. Litton</u>, 308 U.S. 295 (1939) …………………………………………………..          5

<u>Westcon Group N. Am., Inc. v. RBS Citizens, N.A. (In re NobleHouse Techs., Inc.)</u>,
   2013 Bankr. LEXIS 5397 (Bankr. N.D.N.Y. December 24, 2013) ………………          5

<u>In re Applied Theory Corp.</u>, 345 B.R. 56 (S.D.N.Y. 2006), In re Applied Theory Corp.,
   493 F.3d 82, 87 (2d Cir. 2007) …………………………………………………….          5

<u>In re Lockwood</u>, 14 B.R. 374 (Bankr. E.D.N.Y. 1981) ………………………………….          5

<u>Benjamin v. Diamond (In re Mobile Steel Co.)</u>, 563 F.2d 692 (5th Cir. 1977) ……….          5

<u>In re Bolin & Co.</u>, 437 B.R. 731 (D. Conn. 2010) ……………………………………          5, 6

<u>In re Fabricators, Inc.</u>, 926 F.2d 1458 (5th Cir. 1991)  ………………………………          5, 7

<u>In re Sentinel Mgmt. Group, Inc.</u>, 728 F.3d 660 (7th Cir. 2013) ……………………..          6

<u>In re Lifschultz</u>, 132 F.3d 339 (7ths Cir. 1997) ……………………………………          6

LightSquared LP v. SP Special Opportunities LLC (In re LightSquared Inc.),
    511 B.R. 253 (Bankr. S.D.N.Y. 2010) ……………………………………………….    6, 7
80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.),
    169 B.R. 832 (Bankr. S.D.N.Y. 1994) …………………………………………..    6, 8

In re Tampa Chain Co., 53 B.R. 772 (Bankr. S.D.N.Y. 1985) …………………..    6

In re Phase I Molecular Toxicology, Inc., 287 B.R. 571 (Bankr. D.N.M. 2002) ……    7

Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.),
    379 B.R. 425 (S.D.N.Y. 2007) …………………………………………………….    5, 8

Trone v. Smith (In re Westgate-California Corp.), 642 F.2d 1174 (9th Cir. 1981) ……    5

In re KDI Holdings, 277 B.R. 493 (Bankr. S.D.N.Y. 1999) ………………………..    8

Delta Filter Corp. v. Morin, 108 A.D.2d 991 (3d Dept. 1985) …………………….    8

Eagle Comtronics, Inc. v. Pico, Inc., 89 A.D.2d 803 (4th Dept. 1982) ……………    8

Ferranti Electric, Inc. v. Harwood, 43 Misc.2d 533
    (Sup. Ct., Nassau County June 25, 1964) …………………………………………    8

Minnesota Mining & Mfg. Co. v. Technical Tape Corp., 23 Misc.2d 671
    (Sup. Ct., Westchester County September 11, 1959) ……………………………    8

North Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 44 (2d Cir. 1999) ……………    9

Ashland Management Inc. v. Janien, 82 N.Y.2d 395, 407 (1993) …………………    9

Hudson Hotels Corp., 995 F.2d 1173 (2d Cir. 1991) ……………………………….    9

Integrated Cash Management Servs., 920 F.2d 171 (2d Cir. 1991) …………………    9, 13

Defiance Button Mach. Co. v. C&C Metal Prods. Corp., 759 F.2d 1053
    (2d Cir. 1985) …………………………………………………………………    9

Leo Silfen Inc., v. Cream, 29 N.Y. 2d 387 (1972) …………………………………    9

Kadant Inc. v. Seeley Mach. Inc, 244 F.Supp.2d 19 (N.D.N.Y 2003) ………………    9, 10

Marcone Apw., LLC v. Cervall Co., 85 A.D.3d 1693 (2011) ………………………..    10

Poller v. BioScrip, Inc., 974 F.Supp. 2d 204 (S.D.N.Y. 2013) ………………………    11, 12, 13

Doubleclick, Inc. v Henderson, 1997 N.Y. Misc. LEXIS 577
    (Sup. Ct. New York County Nov. 5, 1997) ………………………………………    12

Design Strategies, Inc. v. Davis, 384 F.Supp. 2d 649 (S.D.N.Y. 2005) ………………    12

Design Strategies, Inc., v. Davis, 469 F.3d 284 (2d Cir. 2006) ………………………..    12

Beard Research, Inc. v. Kates, 8 A.3d 573 (Del. Ch. 2010) …………………………..    12

Am. Fed. Group, Ltd. v. Rothenberg, 136 F. 3d 897 (2d Cir. 1998) ………………...    12

Abraham Zion Corp. v. Lebow, 593 F.Supp. 551 (S.D.N.Y. 1994) ………………….    12

Abraham Zion Corp. v. Lebow, 761 F.2d 93 (2d Cir. 1985)  ………………………..    12

Am. Bldg. Maint. Co. v. ACME Prop. Servs., 515 F.Supp.2d 298 (N.D.N.Y. 2007) ...    13

Roy Exp. Co. Establishment v. Columbia Broadcasting Sys., Inc.,
    672 F.2d 1095 (2d Cir. 1982) ……………………………………………….    13

Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.,
    920 F.2d 171(2d Cir. 1990)………………………………………………….    9, 13

Innoviant Pharm., Inc. v. Morganstern, 390 F.Supp.2d 179 (N.D.N.Y. 2005) ……..    13

First Mfg. Co., Inc. v. Young, 45 Misc. 3d 1214 (A)
    (Sup. Ct. Suffolk Co. Nov. 3, 2014) ………………………………………………    13

Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co., 70 N.Y.2d 382, 388 (1987) ……………...    14

Citibank, N.A. v. Walker, 12 A.D.3d 480(2d Dept. 2004) …………………………….    14

SRM Beauty Corp. v. Sook Yin Loh, 30 Misc. 3d 1222 (A)
    (Sup. Ct. Queens Co. Feb. 14, 2011) ………………………………………………..    14

Marks v. Energy Materials Corp., 2015 U.P.S. Dist. LEXIS 75320
    (S.D.N.Y. June 9, 2015) …………………………………………………………..    14, 16

United States v. Nagelberg, 772 F. Sup. 120 (East E.D.N.Y. 1991) …………………..    14

Ptachewich v. Ptachewich, 96 A.D.2d 582 (2d Dept. 1983) …………………………    14

Breeden v. Bennett (In re Bennett Funding Group Inc.),
    367 B.R. 269 (Bankr. N.D.N.Y. 2007) …………………………………………….    15

In re Golden Distributors Ltd., 128 B.R. 342 (Bankr. S. D. N.Y. June 11, 1991) …….    15

Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso, Tex., 87 N.Y.2d 36 (1995) ..    16

Cross Media Mktg. Corp. v. Nixon (In re Cross Media Mktg. Corp.), 2006 Bankr.
LEXIS 4219 (Bankr. S.D.N.Y. April 6, 2006) ………………………………….    16

Standard, LLC v. Rubbard, LLC, 2016 U.S. Dist. LEXIS 15721
    (S.D.N.Y. Feb. 3, 2016) …………………………………………………..    16

Harper & Row, Publrs. v. Nation Enters., 723 F.2d 195, 201 (2d Cir. 1993) ………….    16

Thyroff v. Nationwide Mut. Ins. Co., 8 N.Y. 3d 283 (2007) ……………………………    16

B&C Realty Co. v. 159 Emmut Props, LLC, 106 A.D.3d 653 (1st Dept. 2013) ………..    17

W.L. Green Industries, Inc. v. Western Intertrading, Ltd.,
    1992 U.S. Dist. LEXIS 7697 (S.D.N.Y. May 27, 1992) …………………………….    17

Fantis Foods, Inc. v. Standard Importing Co. Inc., 49 N.Y.2d 317, 326 (1980) ……….    17

Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC
(In re Bayou Group, LLC), 439 B.R. 284 (S.D.N.Y. 2010) ………………………….    18

Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P.,
    (In re: Bayou Group, LLC), 362 B.R. 624 (S.D.N.Y. 2007) ………………………..    18, 20

Terry v. June, 432 F.Supp.2d 635 (W.D. Va. 2006) …………………………………….    19

Mark A. McDermott, Ponzi Schemes and the Law of Fraudulent
    and Preferential Transfers, 72 Am. Bankr. L.J. 157, 173 (1998) …………………….    19

Integrity Elecs., Inc. v. Garden State Distribs., 2016 U.S. Dist. LEXIS 86143
    (E.D.N.Y. June 30, 2016) ……………………………………………………….    21, 22

United States v. Watts, 786 F.3d 152 (2d Cir. 2015) …………………………………..    21

Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.),
    403 F.3d 43 (2d Cir. 2005) ……………………………………………………….    21, 22


Statutes

Fed. R. Civ. P. 56 …………………………………………………………    2
Fed. R. Civ. P. 56(a) ………………………………………………………    2
Fed. R. Bankr. P. 7056 ……………………………………………………    2

11 U.S.C. §510 ……………………………………………………………    1, 4, 22
11 U.S.C. §105(a) …………………………………………………………..    1, 22
11 U.S.C. § 542 ……………………………………………………………    1,15, 22
11 U.S.C. §548 ……………………………………………………………..    1,18,19, 20, 22, 23
11 U.S.C. §550 ……………………………………………………………..    1, 18, 22, 23

11 U.S.C. §551 ……………………………………………………………………    1, 22, 23

N.Y. Debtor & Creditor Law § 276 …………………………………………..    20
N.Y. Debtor & Creditor Law § 273 ……………………………………………    21
N.Y. Debtor & Creditor Law § 272(a) …………………………………………    22

## PRELIMINARY STATEMENT

Plaintiff, Marc Ehrlich, Esq., Chapter 7 Trustee for the estate of the Debtor, Hoffmans Trade Group LLC ("Trustee"), submits this Memorandum of Law in support of his motion for summary judgment against Defendants, McLane Global ("McLane"); Jordan Laccetti ("Laccetti"); Michael Coakley ("M. Coakley") (collectively "Defendants"), on each of the eleven (11) Counts set forth in the Trustee's "Adversary Complaint to Avoid and Recover Transfers and for Other Relief ("Complaint") as follows:  (1) equitable subordination against McLane under 11 U.S.C. §§ 510(c) and 105(a); (2) misappropriation of trade secrets against Defendants under New York law; (3) breach of the duty of loyalty against Laccetti and M. Coakley; (4) unfair competition against McLane; (5) unjust enrichment against Defendants; (6) turnover and accounting against Defendants under 11 U.S.C. § 542; (7) conversion against Defendants; (8) fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(A), 550(a)(1) and (a)(2) and 551; (9) fraudulent transfer against Defendants under 11 U.S.C. §§ 548(a)(1)(B), 550(a)(1) and (a)(2) and 551 (collectively "Counts").

McLane, through Laccetti and M. Coakley, misappropriated, converted and benefitted from the Debtor's Customer Data, as defined in the Complaint, to the detriment of the Debtor and its creditors.  Notwithstanding McLane's blunder buss denial of any wrongdoing, the record clearly establishes misappropriation.

## STATEMENT OF FACTS

The facts entitling Trustee to summary judgment against Defendants are fully set forth in its Local Rule 7056-1 Statement of Undisputed Material Facts ("7056-1 Statement"), the September 7, 2016 Declaration of Leigh Hoffman, Esq. ("Hoffman Declaration"), and all the exhibits submitted in support of this Motion.  The facts will not be duplicated here, but are incorporated by reference.

## PROCEDURAL HISTORY

Hoffmans Trade Group LLC (the "Debtor") entered bankruptcy through the filing of an involuntary petition on June 28, 2013 (the "Petition Date"), which was amended on July 19, 2013. The Debtor did not contest the involuntary filing, and on August 2, 2013, the Court entered the Order for Relief.

The Trustee was duly appointed Chapter 7 Trustee of the Debtor's bankruptcy estate on August 2, 2013. Deily & Glastetter, LLP was retained as special counsel to the Trustee by Order dated December 11, 2013.

On January 15, 2014, McLane filed its proof of claim (Claim No. 11-1), asserting a claim against Debtor in the amount of $234,718.11.

Trustee initiated this adversary proceeding against Defendants by filing the Complaint on July 31, 2015. (*See* Def. MSJ Exhibit 1).

Defendants filed their Answer on August 26, 2015. (*See* Def. MSJ Exhibit 2).

The Court held several conferences on this adversary proceeding and, on June 27, 2016, issued its most recent Amended Scheduling Order requiring that all dispositive motions to be filed served and made returnable on or before September 28, 2016. This Motion is therefore timely.

## ARGUMENT

### A. Summary Judgment Standard

Pursuant to Fed. R. Civ. Proc. 56, made applicable to these proceedings by Fed. R. Bankr. Proc. 7056, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if a dispute over such fact "might affect the outcome of the suit under the

governing law" and would preclude the entry of summary judgment. <u>Anderson v. Liberty Lobby,</u> <u>Inc.</u>, 477 U.S. 242, 248 (1986).

When no genuine triable issues of material fact exist, the moving party is entitled to judgment as a matter of law.  See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986) (finding that entry of summary judgment is mandated against a nonmoving party who "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof").

In order to defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." <u>Anderson v. Liberty Lobby,</u> <u>Inc.</u>, 477 U.S. at 252. Instead, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

Although a court must "resolve ambiguities and draw reasonable inferences against the moving party," the nonmoving party may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial' "and summary judgment should be entered. <u>Matsushita</u>, 475 U.S. at 587 (citing <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)).

**POINT I**

**MCLANE'S INEQUITABLE CONDUCT NECESSITATES EQUITABLE
SUBORDINATION OF ITS CLAIM FILED AGAINST DEBTOR'S ESTATE**

As noted by the Second Circuit in <u>Musso v. Ostashko</u>, 468 F.3d 99 (2006):

> The bankruptcy court . . . does not lack the means to address any
> inequities that might arise as a consequence of acknowledging the
> Trustee's status as a judgment lien creditor.  For example, "as courts
> of equity," federal bankruptcy courts have the power "to subordinate
> the claims of one creditor to those of others."  The "broad equitable
> power" of bankruptcy courts "to disallow and reorder claims" has
> long been recognized in case law, beginning with the Supreme
> Court's opinion in <u>Taylor v. Standard Gas & Elec. Co.</u>, 306 U.S. 307
> (1939).

<u>Id.</u> at 108 (quoting <u>HBE Leasing Corp. v. Frank</u>, 48 F.3d 623, 634 (2d. Cir. 1995)).

The bankruptcy court's power expressed in <u>Musso</u> is codified at 11 U.S.C. § 510, the

pertinent provisions of which provide:

> (c)      . . . after notice and a hearing, the court may –
>
> (1) under principles of equitable subordination, subordinate for
> purposes of distribution all or part of an allowed claim to all or
> part of another allowed claim or all or part of an allowed interest
> to all or part of another allowed interest; or
>
> (2) order that any lien securing such a subordinated claim be
> transferred to the estate.

11 U.S.C. § 510(c)(1)-(2).

When the bankruptcy court finds inequitable behavior on the part of a creditor it can

subordinate that creditor's claim even when the claim does not lack a lawful basis.  <u>Musso</u>, 468 F.3d

at 109 (quoting <u>Kelleran v. Andrijevic</u>, 825 F.2d 692, 697 (2d. Cir. 1987) (Blumenfeld, J., dissenting))

(citing <u>Sure-Snap Corp. v. State Street Bank & Trust Co.</u>, 948 F.2d 869, 876 (2d Cir. 1991) (noting

that equitable subordination is appropriate, *inter alia*, when the subordinated claimant has engaged in

inequitable conduct that injures competing claimants)).  Most importantly, <u>Musso</u> provides

discretion to the bankruptcy court to "'sift the circumstances surrounding any claim to see that

injustice or unfairness is not done in administration of the bankruptcy estate.'" Id. (quoting

Kelleran, 825 F.2d at 697-98 (Blumenfeld, J. dissenting) (quoting Pepper v. Litton, 308 U.S. 295,

307-08 (1939)).

Ultimately, equitably subordinating a claimant's claim is to effect and reorder distribution to

creditors of the bankruptcy estate. Westcon Group N. Am., Inc. v. RBS Citizens, N.A. (In re

NobleHouse Techs., Inc.), 2013 Bankr. LEXIS 5397 at * 11 (Bankr. N.D.N.Y. December 24, 2013)

(citing In re Applied Theory Corp., 345 B.R. 56, 59 (S.D.N.Y. 2006), aff'd, 493 F.3d 82, 87 (2d Cir.

2007) [citing In re Lockwood, 14 B.R. 374, 380-81 (Bankr. E.D.N.Y. 1981)]).

Federal courts have consistently held that equitable subordination is an "unusual remedy"

and that it should only be used in "limited circumstances". In re NobleHouse Techs., Inc., 2013

Bankr. LEXIS 5397 at *11 (quoting In re Bolin & Co., 437 B.R. 731 (D. Conn. 2010); citing

Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.), 926 F.2d 1458, 1464 (5th Cir.

1991)).   The remedy is remedial in nature and not penal – meaning the doctrine should be applied

only to the extent necessary to offset the specific harm suffered as a result of the inequitable

conduct of the subordinated creditor. Id. at *11 (quoting In re Fabricators, Inc., 926 F.2d at 1464

(quoting Trone v. Smith (In re Westgate-California Corp.), 642 F.2d 1174, 1178 (9th Cir. 1981)).

However, equitable subordination is a "personal disability" that focuses on the claimant and not the

claim – thus a creditor's inequitable conduct can result in the equitable subordination of all of its

claims, as opposed to only those claims related to the misconduct. In re Enron Corp., 379 B.R. at

440-41 (citations omitted).

The initial burden of establishing grounds for equitable subordination of a creditor's claim is

with the objecting party. Id. (citing In re Fabricators, Inc., 926 F.2d at 1464 [citing Benjamin v.

Diamond (In re Mobile Steel Co.), 563 F.2d 692, 701 (5th Cir. 1977)]).   The elements necessary for a

court to subordinate a claim are when:

> (1) the creditor in question engaged in inequitable conduct; (2) the misconduct resulted in injury to other creditors or conferred an unfair advantage on the claimant; and (3) the subordination of the creditor's claim is not inconsistent with other provisions of the Bankruptcy Code.

Id. at 12 (citing In re Bolin & Co., 437 B.R. at 760 [citing In re Mobile Steel Co., 563 F.2d at 699-700]).

As noted this Court in In re NobleHouse Techs., Inc., the misconduct that has been deemed by courts to be sufficiently inequitable to warrant equitable subordination generally falls into one of three categories:  "'(1) fraud, illegality, breach of fiduciary duties; (2) under-capitalization; [or] (3) claimant's use of the debtor as a mere instrumentality or alter ego.'"  Id. at 12-13 (quoting In re Sentinel Mgmt. Group, Inc., 728 F.3d 660 (7th Cir. 2013) [quoting In re Lifschultz, 132 F.3d 339, 345 (7ths Cir. 1997)]).

In LightSquared LP v. SP Special Opportunities LLC (In re LightSquared Inc.), 511 B.R. 253 (Bankr. S.D.N.Y. 2010), the court noted "[i]nequitable conduct is not limited to fraud or breach of contract, rather, it includes even lawful conduct that shocks one's good conscience."  Id.  In re LightSquared, Inc. cited Judge Bernstein's decision in 80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.), 169 B.R. 832, 837 (Bankr. S.D.N.Y. 1994) for the meaning of "inequitable conduct," which opines:

> A secret or open fraud, lack of faith or guardianship by a fiduciary; an unjust enrichment, not enrichment by bon chance, astuteness or business acumen, but enrichment through another's loss brought about by one's own unconscionable, unjust, unfair, close or double dealing or foul conduct.

Id. at 347-48 (quoting In re 80 Nassau Assocs., 169 B.R. at 837 [quoting In re Tampa Chain Co., 53 B.R. 772, 779 (Bankr. S.D.N.Y. 1985)].

Where the creditor to be subordinated is an "insider" of the Debtor, that creditor's conduct (in analyzing whether to equitably subordinate that creditor's claim) will be subject to "rigorous

scrutiny." Id. at 16 (citing In re Fabricators, Inc., 926 F.2d at 1465 [citations omitted]).  Insider

status alone; however, is insufficient by itself to warrant equitable subordination of a creditor's claim.

Id. (citing In re Phase I Molecular Toxicology, Inc., 287 B.R. 571, 580 (Bankr. D.N.M. 2002)).  To

equitably subordinate an insider's claim "'the creditor-insider must actually use its power to control

to its own advantage or to the other creditor's detriment.'"  Id. (quoting In re Phase I Molecular

Toxicology, Inc., 287 B.R. at 580 [quoting In re Fabricators, Inc., 926 F.2d at 1467]).  McLane

utilized the insider status of Jordan Laccetti and Michael Coakley to obtain the Customer Data of

this debtor.  McLane placed substantial value on this information, but ultimately paid this debtor

nothing.  Instead, after hiring Laccetti and M. Coakley, McLane had its then employees illegally

obtain customer contact information, fulfill the Debtor's customer orders and access the Debtor's

private Customer Data.

Important here is that McLane may not use equitable defenses [i.e. unclean hands] in an

effort to thwart equitable subordination.  As the court states in LightSquared LP v. SP Special

Opportunities LLC (In re LightSquared Inc.), 511 B.R. 253 (Bankr. S.D.N.Y. 2010):

> Subject to limited exceptions, [c]ourts generally have not applied
> common law equitable defenses to causes of action created under
> Chapter 5 of the Bankruptcy Code.  With respect to equitable
> subordination, [the test] focuses only on the actions of the guilty
> creditors and the resulting impact on innocent creditors.  Inequitable
> conduct by the debtor is noticeably absent from the list of relevant
> considerations.  Thus, consideration of the debtor's conduct, as
> opposed to the guilty creditor, and allowing the unclean hands
> defense would be inconsistent with the traditional test for equitable
> subordination, the substantial case law allowing subordination despite
> debtors' participation in wrongdoing, and the purpose of equitable
> subordination.

Id. at fn. 151 (quotation omitted).

The second requirement of the "Mobile Steel" test is simply met in most instances.  As the court noted in Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.), 379 B.R. 425, 433-34 (S.D.N.Y. 2007):

> The second requirement is met where the general creditors are less likely to collect their debts as a result of the alleged inequitable conduct.  "If the misconduct results in harm to the entire creditor body, the [trustee] need not identify the injured creditors or quantify their injury, but need only show that the creditors were harmed in some general, concrete manner."

Id. (quoting In re 80 Nassau Assocs., 169 B.R. 832, 840 (Bankr. S.D.N.Y. 1994); citing In re KDI Holdings, 277 B.R. 493, 514 (Bankr. S.D.N.Y. 1999)).  Creditors of this Estate were substantially harmed by McLane's conduct because the assets of the debtor were taken without any compensation to the Estate.

Finally, the third element of the "Mobile Steel" test is clearly established on these facts as subordination of the McLane's proof of claim is entirely consistent with the other provisions of the Bankruptcy Code.  Receipt by McLane of the Debtor's Customer Data was done willfully and the record is replete with internal McLane documents evidencing the value of the information sought and obtained without payment to the Debtor.

## POINT II

### MCLANE'S MISAPPROPRIATION OF THE DEBTOR'S TRADE SECRETS ENTITLE THE TRUSTEE TO SUMMARY JUDGMENT ON COUNT II OF THE COMPLAINT

"New York has substantially adopted the approach of the original Restatement of Torts (1939) to the law of trade secrets."  Delta Filter Corp. v. Morin, 108 A.D.2d 991, 992 (3d Dept. 1985), (citing Eagle Comtronics, Inc. v. Pico, Inc., 89 A.D.2d 803 (4th Dept. 1982), lv denied 58 N.Y.2d 601 (1982); Ferranti Electric, Inc. v. Harwood, 43 Misc.2d 533 (Sup. Ct., Nassau County June 25, 1964); Minnesota Mining & Mfg. Co. v. Technical Tape Corp., 23 Misc.2d 671 (Sup. Ct.,

Westchester County September 11, 1959), affd.15 A.D.2d 960 (2d Dept. 1962), affd. 18 A.D.2d 679

(2d Dept. 1962)).  Generally, a trade secret is defined as "a formula, process, device or compilation

of information used in one's business which confers a competitive advantage over those in similar

businesses who do not know or use it." Id. (citing Restatement of Torts § 757 comment b (1939));

see also North Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 44 (2d Cir. 1999) (citations omitted).

In order to determine whether the information or documents at issue constitute a trade

secret the following factors should be considered:

> "(1) the extent to which the information is known outside of the
> business; (2) the extent to which it is known to employees and others
> involved in the business; (3) the extent of measures taken by the
> business to guard the secrecy of the information; (4) the value of the
> information to the business and its competitors; (5) the amount of
> effort or money expended by the business in developing the
> information; (6) the ease or difficulty with which the information
> could be properly acquired or duplicated by others."

North Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 44 (2d Cir. 1999) (quoting Ashland Management

Inc. v. Janien, 82 N.Y.2d 395, 407 (1993) [quoting [Restatement of Torts §757, (b)]; citing (Hudson

Hotels Corp., 995 F.2d at 1176 N.1; Integrated Cash Management Servs., 920 F.2d 173)).

As the Second Circuit opined in Haber, a "'customer list developed by a business through

substantial effort and kept in confidence may be treated as a trade secret and protected at the

owner's instance against disclosure to a competitor, provided the information it contains is not

otherwise readily ascertainable'" Id. at 44 (quoting Defiance Button Mach. Co. v. C&C Metal Prods.

Corp., 759 F.2d 1053, 1063 (2d Cir. 1985), cert. denied, 474 U.S. 844 (1985); citing Leo Silfen Inc., v.

Cream, 29 N.Y. 2d 387, 392-93 (1972)).

Secrecy is of primary importance in determining information is a trade secret.  See Kadant

Inc. v. Seeley Mach. Inc, 244 F.Supp.2d 19, 35-36 (N.D.N.Y 2003), (noting that for the six factors

cited above concerned secrecy and that the primary consideration in determining secrecy is whether

the information is easily ascertainable by the public). Secrecy, as it concerns trade secrets, is used in two senses:  "(1) as substantial exclusivity of knowledge of the formula, process, device or compilation of information ('Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret'); and (2) as the employment of precautionary measures to preserve such exclusive knowledge by limiting legitimate access by others ('Nevertheless, a substantial element of secrecy must exist, so that, except by the use of improper means, there would be difficulty in acquiring the information')."  Haber, 188 F.3d at 44 (quoting Restatement of Torts § 757 comment b (1939)).

McLane goes to great effort throughout deposition testimony of Laccetti, G. Coakley, Todd Frease and Mike Julian to assert that the food bank customer information is readily available. However, that testimony is belied by every McLane internal communication provided to the Trustee. (Exs. A - Q).  If that information was so readily available, why would it be the number one benefit listed by McLane as a reason to acquire the Debtor?  Further, if the food bank information was available on the internet, why would Laccetti repeatedly, illegally access the Debtors email server and forward those email addresses, contact information, shipping orders and customer budget requests to his new McLane email address?[1]  Defendants' self-serving affidavits should not be countenanced by the Court as they are belied by the truthfulness of the documentary evidence which shows the exclusivity of the Debtor's Customer Data.

As opined in Kadant Inc., "while contact information may be readily ascertainable through other sources, things such as purchasing histories, or customer preferences may not. Id. at 36 (citation omitted).  Additionally, where it is "shown that the information is cultivated through great effort, time and expense . . . the conclusion may not be so easily drawn.  Id. at 37.

---

[1] As is apparent from Defendants  Exhibits "6," "12" and "14" Laccetti  and M. Coakley resigned from the Debtor prior to starting employment with McLane on May 6, 2013, making several of their  efforts to access the Debtor's Customer Data from the Debtor's e-mail server after his employment with the Debtor had ended.

In <u>Marcone Apw., LLC v. Cervall Co.</u>, 85 A.D.3d 1693 (2011) the Fourth Department similarly opined that while customer lists are not entitled to trade secret protection to the extent that they are readily ascertainable from sources outside of a plaintiff's business, where the documents misappropriated are "not simple compilations of customer's names, addresses or phone numbers . . . [b]ut the documents contain detailed information about each customer, including the names of individual contact persons, customer-specific pricing information, credit terms and limits and the customer's class rankings based on their margin performance" it may be considered a trade secret. <u>Id.</u> at 1695-96.

Here, the Debtor's cultivation through effort, time and expense was acknowledge by McLane who, in its original proposal to purchase the Debtor, included the Debtor's ability to monetize four (4) years of start-up work as the 1st incentive.  (Ex. B).   Laccetti explained in great detail the unique combination of efforts in formula and process that Debtor utilized, called "opportunity boys" which afforded the Debtor a unique trade secret advantage in the market place. (Ex. H).   The Debtor's Customer Data was clearly a trade secret under New York law.   The documentary evidence submitted by the Trustee belies McLane's assertion that all the Debtor ever had is what was available to the public.  It can be reasonably surmised that if the information were available to the public McLane would not have to steal it from the Debtor. Moreover, McLane misappropriated the Debtor's trade secret by having it illegally accessed by Laccetti and M. Coakley and then forwarded directly to McLane. (Exs. C – Q).

## POINT III

### THE INDIVIDUAL DEFENDANTS' BREACH OF THEIR DUTY OF LOYALTY TO THE DEBTOR ENTITLES TRUSTEE TO SUMMARY JUDGMENT ON COUNT II OF THE COMPLAINT

In New York, employees owe their employers duties of good faith and loyalty while carrying out their duties.  <u>Poller v. BioScrip, Inc.</u>, 974 F.Supp. 2d 204, 227 (S.D.N.Y. 2013) (citing,

Doubleclick, 1997 N.Y.Misc. LEXIS 577 at *6 ("It is well-established in the law of this state [New York] than an employee "'is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in performance of his duties'"); Design Strategies, Inc. v. Davis, 384 F.Supp. 2d 649, 659 (S.D.N.Y. 2005), aff'd Design Strategies, Inc., v. Davis, 469 F.3d 284 (2d Cir. 2006) ("Under New York law, an employee owes a duty of good faith and loyalty to his employer").   As noted in Poller, the employee's duties include those of an agent to both disclose information relevant to the affairs of the agency entrusted to him and to refrain from placing himself in a position antagonistic to his principal concerning the subject matter of his agency.  Id. (quoting Beard Research, Inc. v. Kates, 8 A.3d 573, 601 (Del. Ch. 2010)).

Similar to a breach of fiduciary duty, a breach of the duty of loyalty generally "'occurs when a fiduciary commits an unfair, fraudulent or wrongful act, including misappropriation of trade-secrets, misuse of confidential information, solicitation of employer's customers before cessation of employment, conspiracy to bring about mass resignation of an employer's key employees or usurpation of the employer's business opportunity.'" Id. (quoting Beard Research, Inc., 8 A.3d 602)). More importantly, in both the Second Circuit and New York an employee's fiduciary duty may continue past termination, and includes the specific duty not to divert business in which the former employer has the requisite tangible expectancy or to exploit to the former employer's detriment specific information obtained during employment that was either technically confidential or was only available as a result of the employee's prior employment. Id. at 227-28.  (quoting Am. Fed. Group, Ltd., 136 F. 3d at 914). citing Abraham Zion Corp. v. Lebow, 593 F.Supp. 551, 569 (S.D.N.Y. 1994), aff'd 761 F.2d 93 (2d Cir. 1985)).

The Trustee has clearly and unequivocally established that Laccetti and M. Coakley breached their duty of loyalty.  In fact, the Trustee has established that Laccetti illegally and unlawfully accessed the Debtor's protected email server and stole multiple emails which contained both contact

12

names, contact emails and more importantly, the Debtor's actual customer orders and provided those directly to his superiors at McLane. (Exs. C – O). The Trustee has also established that Michael Coakley forwarded his Debtor email contacts to McLane. (Ex. Q). These events demonstrate the breach of their duty of loyalty to the Debtor.

**POINT IV**

**MCLANE ENGAGED IN UNFAIR COMPETITION AND TRUSTEE
IS ENTITLED TO SUMMARY JUDGMENT ON
COUNT III OF THE COMPLAINT**

A New York unfair practices claim "'usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property.'" Am. Bldg. Maint. Co. v. ACME Prop. Servs., 515 F.Supp.2d 298, 311 (N.D.N.Y. 2007) (quoting Roy Exp. Co. Establishment v. Columbia Broadcasting Sys., Inc., 672 F.2d 1095, 1105 (2d Cir. 1982)). In the common law doctrine of unfair competition is broad, flexible, adaptable and capacious; however, is not limitless. It requires some appropriation of an idea or knowledge in which the alleging party had a property interest. See Poller, 974 F. Supp. 2d at 234-36 (citations and quotations omitted).

"Courts have found that the misappropriation of detailed, internal customer information can give rise to a claim of unfair competition, but only when that customer information has several of the attributes of a trade secret and is being used in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." Id. (citing Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990); Innoviant Pharm., Inc. v. Morganstern, 390 F.Supp.2d 179, 194 (N.D.N.Y. 2005)). "Nevertheless, confidential information not amounting to a trade secret may be protected from pirating and subsequent use under common law theories of unfair competition." See First Mfg. Co., Inc. v. Young, 45 Misc. 3d 1214 (A) (Sup. Ct. Suffolk Co. Nov. 3, 2014) (various citations omitted).

13

As detailed in Point II *supra*, the Debtor's Customer Data is a trade secret that was misappropriated by McLane.  Additionally, and for the same reasons, McLane's improper and unlawful access to Debtor's Customer Data on numerous occasions, including the taking of the customer contacts, customer email addresses and customer order preferences, violated the Debtor's property rights.  The means by which McLane obtained this information was improper and unlawful resulting in unfair competition.

## POINT V

**MCLANE WAS UNJUSTLY ENRICHED AT THE DEBTOR'S EXPENSE
AND TRUSTEE IS ENTITLED TO SUMMARY JUDGMENT
ON COUNT IV OF THE COMPLAINT**

To establish a cause of action for unjust enrichment a plaintiff must show (1) the other party was enriched; (2) at the claiming party's expense; and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.  Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co., 70 N.Y.2d 382, 388 (1987) (quoting Citibank, N.A. v. Walker, 12 A.D.3d 480, 481 (2d Dept. 2004)).

In the context of misappropriation of trade secrets, a plaintiff may maintain a claim for unjust enrichment for misappropriation of a client list not withstanding that the client list at issue does constitute a trade secret.  SRM Beauty Corp. v. Sook Yin Loh, 30 Misc. 3d 1222 (A) (Sup. Ct. Queens Co. Feb. 14, 2011).  "' It is well established that unjust enrichment does not require proof of any wrongdoing by the enriched party.'" Marks v. Energy Materials Corp., 2015 U.P.S. Dist. LEXIS 75320 at *18-19 (S.D.N.Y. June 9, 2015) (quoting United States v. Nagelberg, 772 F. Sup. 120, 122 (East E.D.N.Y. 1991) [citing Ptachewich v. Ptachewich, 96 A.D.2d 582 (2d Dept. 1983)).

McLane has on numerous occasions obtained the Debtor's Customer Data by improper and unlawful means.  Taking the Debtor's Customer Data, including customer contacts, customer email addresses and customer order preferences violated the Debtor's property rights and unjustly

enriched McLane at the Debtor's (and its other creditors) expenses.  The means by which McLane

obtained this information was improper and unlawful and would be against equity and good

conscious to permit McLane to retain it without payment to the Estate.

### POINT VI

### THE TRUSTEE IS ENTITLED TO TURNOVER OF THE DEBTOR'S CUSTOMER DATA AND PROFITS DERIVED THEREFROM FROM MCLANE

Pursuant to 11 U.S.C. §542(a),

> ". . . an entity other than a custodian in possession, custody or
> control during the [bankruptcy] case of property that the Trustee
> may use, sell or lease under Section 363 of this title, or that the
> debtor may exempt under Section 522 of this title shall deliver to
> the Trustee, an account for such property or the value of such
> property, unless such property is of inconsequential value or
> benefit to the estate."

As the Court opined in Breeden v. Bennett  In re Bennett Funding Group, Inc., 367 B.R.

269 (Bankr. N.D.N.Y. 2007) "the general turnover provision of the Bankruptcy Code recognizes

that property of the estate includes property in the possession of third parties other than the debtor

at the time of commencement of the bankruptcy case" and, by its very definition, Section 542 exists

"to address transfers of estate property which took place prior to the commencement of the case.

Id. at 287 (citation and quotations omitted) (emphasis original).  As the Court in In re Golden

Distributors Ltd., 128 B.R. 342 (Bankr. S. D. N.Y. June 11, 1991) opined, the mere solicitation of

the debtor's customer's list is insufficient to sustain the right to turn over unless the defendant

acquired confidential customer lists from the Debtor or improperly attained or retained confidential

copies of the debtor's confidential customer list.  Id. at 347.

McLane has on numerous occasions obtained the Debtor's Customer Data by improper and

unlawful means.  Taking the Debtor's Customer Data, including customer contacts, customer email

addresses and customer order preferences violated the Debtor's property rights.  The means by

which McLane obtained this information was improper and unlawful and the proceeds of the

Debtor's Customer Data should be turned over to the Trustee.

## POINT VII

### MCLANE CONVERTED THE DEBTOR'S PROPERTY
### AND TRUSTEE IS ENTITLED TO SUMMARY JUDGMENT
### ON COUNT VI OF THE COMPLAINT

"Conversion is the unauthorized assumption and exercise of the right of ownership over

goods belonging to another to the exclusion of the owner's rights." Vigilant Ins. Co. of Am. v.

Hous. Auth. of City of El Paso, Tex., 87 N.Y.2d 36, 44 (1995) (internal quotation marks and citation

omitted).

The elements of a conversion claim in New York are: "(1) the plaintiff has an immediate

right to possession of the property converted; (2) the defendant's possession of the property was

unauthorized; (3) the defendant acted to exclude the rights of the lawful owner of the property; (4)

the property is specifically identifiable; and (5) the defendant is obligated to return the property."

Cross Media Mktg. Corp. v. Nixon (In re Cross Media Mktg. Corp.), 2006 Bankr. LEXIS 4219 at

*17 (Bankr. S.D.N.Y. April 6, 2006) (citation omitted).

To sustain a successful claim for conversion, a plaintiff is required to allege an interference

with property rights, but also the defendant's unauthorized dominion and control over those

property rights to the complete exclusion of the plaintiff-the rightful possessor. See Standard, LLC

v. Rubbard, LLC, 2016 U.S. Dist. LEXIS 15721 at *60 (S.D.N.Y. Feb. 3, 2016) (quoting Harper &

Row, Publrs. v. Nation Enters., 723 F.2d 195, 201 (2d Cir. 1993); citing Vigilant Ins. Co., of Am. v.

Hous. Auth., 87 N.Y.2d 36, 44 (1995)).

Moreover, New York courts have held that the misappropriation of non-tangible property

may constitute a proper claim for conversion. Id. at Id. (citing Thyroff v. Nationwide Mut. Ins. Co.,

8 N.Y. 3d 283, 292 (2007) and a plaintiff may properly assert a claim for conversion for money. B&C Realty Co. v. 159 Emmut Props, LLC, 106 A.D.3d 653, 656 (1st Dept. 2013) (citation omitted).

Where goods have been converted "the party whose goods have been converted is in the business of selling those goods, has customer orders for such goods, and is prevented from fulfilling such orders by reason of a defendant's wrongful conversion, lost profits 'may reasonably be expected to arise from the conversion' and are properly recoverable as an item of damages." W.L. Green Industries, Inc. v. Western Intertrading, Ltd., 1992 U.S. Dist. LEXIS 7697 at *26 (S.D.N.Y. May 27, 1992) (quoting Fantis Foods, Inc. v. Standard Importing Co. Inc., 49 N.Y.2d 317, 326 (1980)).   The Trustee has established documentary proof McLane wrongfully converted the Debtor's orders and future economic opportunities which irreparably harmed the debtor and its creditors.

McLane does not and cannot suggest that the Debtor's Customer Data is not property of the Debtor.   Instead, McLane goes to great effort throughout deposition testimony of Laccetti, G. Coakley, Todd Frease and Mike Julian to assert that the food bank customer information is readily available.   As detailed in Point II supra, that testimony is belied by every McLane internal communication provided to the Trustee. (Exs. A - Q).

McLane has on numerous occasions obtained the Debtor's Customer Data by improper and unlawful means.   Taking the Debtor's Customer Data, including customer contacts, customer email addresses and customer order preferences violated the Debtor's property rights and benefited McLane to the exclusion of the Debtor (and its other creditors).   The means by which McLane obtained this specifically identifiable information was improper and the proceeds resulting therefrom should be returned to the Debtor.

<u>**POINT VIII**</u>

**THE TRANSFER OF CUSTOMER DATA TO MCLANE WAS ACTUALLY AND
CONSTRUCTIVELY FRAUDULENT UNDER THE BANKRUPTCY CODE
AND NEW YORK DEBTOR & CREDITOR LAW, ENTITLING TRUSTEE
TO SUMMARY JUDMGENT ON COUNTS VII – X OF THE COMPLAINT**

**A.  <u>The Transfer of the Debtor's Customer Lists and Data Constitutes an Actual
Fraudulent Conveyance Under Bankruptcy Code Section 548(a)(1)(A)</u>**

11 U.S.C. 548(a)(1) provides:

> The trustee may avoid any transfer . . . of an interest of the debtor in
> property, or any obligation . . . incurred by the debtor that was made
> or incurred on or within 2 years before the date of the filing of the
> petition, if the debtor voluntarily or involuntarily –
>
> (A)    made such transfer or incurred such obligation with the actual
>        intent to hinder, delay, or defraud any entity to which the
>        debtor was or became, on or after the date that such transfer
>        was made or such obligation was incurred, indebted . . . .

11 U.S.C. § 548(a)(1)(A).

An actual fraudulent conveyance turns on the intent of the debtor in making the transfer,
and not the state of mind of the transferee.  See <u>Christian Bros. High Sch. Endowment v. Bayou No
Leverage Fund, LLC (In re Bayou Group, LLC)</u>, 439 B.R. 284, 304 (S.D.N.Y. 2010) (citations
omitted).  Moreover, it is not imperative that the effort to hinder, delay and defraud is successful,
only that intent to hinder, delay and defraud exists.  <u>Id.</u> at 304-05.

Here, the Debtor did not take any action at all on the fraudulent transfers but insiders,
Laccetti and M. Coakley, of the Debtor fraudulently conveyed the Customer Data to McLane.  There
is no question with respect to their intent, as provided in the communications and the improper and
unlawful method employed to obtain the Customer Data.

Lastly, under 11 U.S.C. § 550, Trustee is entitled to recover the entirety of the property
transferred.  <u>In re Bayou Group, LLC</u>, 439 B.R. at 298.  As stated in <u>In re Bayou Group, LLC</u>, "[a]
transfer that constitutes an actual or intentional fraudulent conveyance under Section 548(a)(1)(A)

may be avoided in its entirety whether or not the debtor received value in exchange for the transfer." Id. at 304 (citing 11 U.S.C. § 548(a)(1)(A); Bayou I, 362 B.R. at 629-30 [citing Terry v. June, 432 F.Supp.2d 635, 642 (W.D. Va. 2006); Mark A. McDermott, Ponzi Schemes and the Law of Fraudulent and Preferential Transfers, 72 Am. Bankr. L.J. 157, 173 (1998)]). While recovery under Section 5487(a)(1)(B) may be more limited under certain circumstances, those circumstances do not exist here as McLane provided no value to the Debtor in connection with its receipt of the transfer.

A return of the improperly conveyed Customer Data cannot right this wrong. McLane already has obtained the Customer Data, this Court cannot "unring that bell". Rather, the Court can direct McLane to account and turnover the gross proceeds obtained from the theft of the debtor's Customer Data.

**B. The Transfer of Debtor's Customer Lists and Data Constitutes a Constructive Fraudulent Conveyance Under Bankruptcy Code Section 548(a)(1)(B)**

In addition to recovery of actual fraudulent conveyances, a trustee may avoid any transfer of an interest of the debtor in property within 2 years prior to the bankruptcy that was constructively fraudulent, meaning the debtor "received less than reasonably equivalent value in exchange for such transfer or obligation" and: (1) "was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;" (2) "was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;" (3) "intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured;" or (4) "made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business." 11 U.S.C. § 548(a)(1)(B)(i)-(ii)(I)-(IV).

As discussed above, there is no question that the Debtor's Customer Data was obtained by McLane through improper and unlawful means. There is also no question, and McLane will readily admit, that it paid nothing at all for the Debtor's Customer Data. McLane also acknowledges that the Debtor was insolvent. The record clearly establishes that Trustee is entitled to summary judgment on its Count for constructive fraudulent conveyances.

### C. McLane Cannot Avoid the Trustee's Recovery of the Fraudulent Transfers as it Did Not Take the Debtor's Customer List and Data in "Good Faith"

Because the Trustee has set forth a *prima facie* case under Section 548(a), the only way for McLane to avoid rescission of the transfer is for it to establish the good faith defense in Section 548(c). McLane bears the burden of proving its affirmative defense, and must establish that it (1) took the Debtor's customer list and data for value and (2) in good faith. In re Bayou Group, LLC, 439 B.R. at 304 (quotation and citations omitted). McLane unequivocally cannot do so.

As detailed above, McLane has on numerous occasions obtained the Debtor's Customer Data by improper and unlawful means. Taking the Debtor's Customer Data, including customer contacts, customer email addresses and customer order preferences violated the Debtor's property rights and benefited McLane at the Debtor's (and its other creditors) expense. The means by which McLane obtained this information was improper and unlawful. McLane did not obtain the Debtor's Customer Data for value nor in good faith.

### D. The Transfer of the Debtor's Customer Lists and Data Constitutes an Actual Fraudulent Conveyance Under the New York Debtor & Creditor Law

The New York Debtor & Creditor Law prohibits actual fraudulent conveyances as follows:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

N.Y. Debtor & Creditor Law § 276.

Here, the Debtor did not take any action at all on the fraudulent transfers but insiders, Laccetti and M. Coakley, of the Debtor fraudulently conveyed the Customer Data to McLane. There is no question with respect to their intent, as provided in the communications and the improper and unlawful method employed to obtain the Customer Data.  A return of the improperly conveyed Customer Data cannot right this wrong.  McLane already has obtained the Customer Data; this Court cannot "unring that bell".  Rather, the Court can direct McLane to account and turnover the gross proceeds obtained from the theft of the debtor's Customer Data.

### E. <u>The Transfer of Debtor's Customer Lists and Data Constitutes a Constructive Fraudulent Conveyance Under the New York Debtor & Creditor Law</u>

The New York Debtor & Creditor Law also prohibits constructively fraudulent conveyances as follows:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration.

N.Y. Debtor & Creditor Law § 273.

A conveyance is deemed constructively fraudulent therefore if it meets two elements:  (1) the conveyance was without "fair consideration" and (2) the transferor is or will be rendered insolvent by the transfer.  <u>Integrity Elecs., Inc. v. Garden State Distribs.</u>, 2016 U.S. Dist. LEXIS 86143 at *18-19 (E.D.N.Y. June 30, 2016) (citing <u>United States v. Watts</u>, 786 F.3d 152, 164 (2d Cir. 2015) [quoting <u>Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)</u>, 403 F.3d 43, 53 (2d Cir. 2005)]).

There is no issue here that the Debtor was insolvent at the time its customer lists and data were transferred to McLane.  Trustee will not belabor that point here.  Interestingly, there is also no issue that the transfer lacks "fair consideration."

The New York Debtor & Creditor Law defines "fair consideration" as "existing '[w]hen in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied.'" Id. at 21 (quoting N.Y. Debtor & Creditor Law § 272(a).  As opined in Integrity Elecs., Inc., "[c]ourts therefore analyze fair consideration by looking to evidence (1) that the recipient of the debtor's property either conveyed property in exchange or discharged an antecedent debt in exchange; (2) that such exchange was a "fair equivalent" of the property received; and (3) that such exchange was made in "good faith." Id. (citing In re Sharp Int'l Corp., 403 F.3d at 53-54).

McLane received the Debtor's customer list and data and did not provide any consideration in return.  McLane's filing of a proof of claim in the Debtor's bankruptcy also evidences that McLane did not satisfy (fully or partially) the Debtor's antecedent obligations to it with the value of the transferred customer list and data.  What is apparent from the record is that McLane negotiated the sale of the transferred customer list and data and, when the opportunity presented itself, took advantage of the infirmity of the Debtor's principal to simply take it for free.

## CONCLUSION

Based on the foregoing, Trustee respectfully requests this Court grant its Motion for Summary Judgment against Defendants  as follows:  (1) equitable subordination against McLane under 11 U.S.C. §§ 510(c) and 105(a); (2) misappropriation of trade secrets against Defendants under New York law; (3) breach of the duty of loyalty against Laccetti and M. Coakley; (4) unfair competition against McLane; (5) unjust enrichment against Defendants; (6) turnover and accounting against Defendants under 11 U.S.C. § 542; (7) conversion against Defendants; (8) fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(A), 550(a)(1) and (a)(2) and 551; (9) fraudulent transfer against Defendants under 11 U.S.C. §§ 548(a)(1)(B), 550(a)(1) and (a)(2) and 551; and for a sum of damages

in excess of $644, 250 and for any such other and further relief the Court deems just and proper.


Dated:  September 7, 2016                    /s/ Leigh A. Hoffman
                                            Leigh A. Hoffman, Esq.
                                            DEILY & GLASTETTER, LLP
                                            *Attorneys for Chapter 7 Trustee*
                                            8 Thurlow Terrace
                                            Albany, New York 12203
                                            Tel:  (518) 436-0344
                                            Fax:  (518) 436-8273
                                            Email:  lhoffman@deilylawfirm.com