UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| HOFFMANS TRADE GROUP LLC, | Chapter 7<br>Case No. 13-11662-REL |
| Debtor | |
| MARC S. EHRLICH, AS TRUSTEE FOR<br>HOFFMANS TRADE GROUP LLC, | |
| Plaintiff | Adv. Pro. No.15-90038 |
| v. | |
| MCLANE GLOBAL, JORDAN LACCETTI,<br>and MICHAEL COAKLEY | |
| Defendants. | |

### TRSUTEE'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO BANKRUPTCY RULE 7056

Plaintiff, Marc Ehrlich, as Trustee for Hoffmans Trade Group LLC ("Trustee"), by and through his counsel, Deily & Glastetter, LLP, submits this Response to Defendants' Motion for Summary Judgment Pursuant to Bankruptcy Rule 7056 ("Defendants' Motion") against Trustee, and in accordance with Local Rule 7056-1 states as follows:

1. As an initial matter, counsel for the Trustee sought and obtained permission from chambers (C. Platt, Esq. on 10/17/16) to refer to the previously filed exhibits in an effort to reduce reproducing necessary exhibits already on file with this Court. All references to numbered exhibits refer to the exhibits submitted in connection with Defendants' Motion. All references to lettered exhibits refer to the exhibits submitted in connection with Trustee's Motion Summary Judgment Pursuant to Bankruptcy Rule 7056 ("Trustee's Motion"). The new exhibits introduced in this

Response will continue from Trustee's Motion exhibits and be referred to as Exhibit "X" and Exhibit "Y".

2. Defendants' Motion collectively fails to demonstrate grounds entitiling it to judgment as a matter of law on any of the claims asserted by the Trustee. Specifically, Defendants have failed to establish absence of fact issues notwithstanding Defendants' submission of three (3) self-serving affidavits of its employees. In fact, Defendants submitted the referenced affidavits and failed to provide the Court key documentary evidence which belies the very averments made therein. Defendants provided emails and attachments to the Trustee in the course of discovery which contradict the testimony provided to this Court in their affidavits. There is no other conclusion than the information was intentionally withheld from the Court by the keepers of the contradictory evidence.

3. The Trustee, relying only on McLane's internal emails and power point programs, has established facts which outline a negotiation with the Debtor for the acquisition of the customer list and two (2) sales people and a potential incentive plan for employment of Gael Coakley. See Exhibit "B". There is no interpretation needed for these material facts, it is directly from their stated agenda at Exhibit "B".

4. The Defendants collectively argue throughout their affidavits that there never was any protectable trade secret. See Brownell Affidavit at p. 10; Frease Affidavit at pp. 21-22; Laccetti Affidavit at p. 9; and M. Coakley Affidavit at p. 9. This argument is disingenuous. McLane offered Laccetti and M. Coakley jobs at McLane and required them to sign employment agreements. (See Exhibits "12" and "14"). Those very employment agreements lay out definitions of "Employer's Customers", "Property; Goodwill; Proprietary Information": which includes the following definition:

> "Business information, such as but not limited to: actual and anticipated relations between Employer and other companies; financial information

> (including sales levels, pricing, profit levels and other unpublished financial data): procurement process, strategies or information; information relating to customer or vendor relationships (including performance requirements, development and delivery schedules, device and/or **product pricing and/or quantities, customer lists, customer preferences**, financial information, credit information; and similar items)." (*Emphasis added*. See Exhibit "12" at ¶ 11b and Exhibit "14" at ¶ 11b).

McLane defines as protected the very same items the Trustee defines as protectable. New York law outlines these items are protectable whether or not written down in an employment agreement. Their argument is wholly incredulous. In fact, Laccetti could find no distinction between HTG's customers and McLane's customers, other than that McLane wrote it down. See Exhibit "6" at pp. 61-65. Similarly, M. Coakley indicated he could find no distinction between why HTG's customer list would be any different than McLane's customer list. See Exhibit "5" at p. 160.

5. The Brownell Affidavit calls directly into question the probative value of the allegations made in the complaint by Trustee's counsel. See Brownell Affidavit p. 9. In response and rebuttal to the evidence put forth by the Defendants, Trustee's counsel obtained independent third-party information about the value of the customer list and Customer Data obtained by the Defendants from HTG. The attached affidavit of John Merlini, President of JSL Partners, Inc., absolutely contradicts the self-serving testimony submitted by each Defendant. (A copy of the J. Merlini Affidavit is attached hereto and incorporated herein as Exhibit "X" ).

6. John Merlini engages in the very same sales to food banks as HTG and McLane. In fact, Mr. Merlini, asserts there is absolutely value in the customer list of the Debtor. Further, Mr. Merlini asserts that the contact information for persons in the food bank industry is not all publically available. All of which completely refutes the self-serving testimony contained in the affidavits submitted is support of Defendants' Motion.

7. Gael Coakley provided testimony to counsel for the Trustee on May 26, 2015, with his counsel present and asking questions. During the four (4) hours of testimony, Gael expressed

concern over the valuable assets of HTG migrating to McLane. See Coakley Audio Deposition at minute 1:33:30 and 2:22:47. The audio testimony of Gael Coakley was provided to counsel for McLane on November 20, 2015. Thereafter, counsel for the Trustee attended Gael Coakley's deposition taken by Conor Brownell, Esq. on March 8, 2016, wherein Gael Coakley completely changed his testimony. See Exhibit "3" at p. 129. Realizing the unreliability of Gael Coakley's testimony, the Trustee did not rely on either sworn testimony in support of Trustee's Motion. Defendants, however, did rely on Gael Coakley but only the later deposition testimony. Trustee is now compelled to provide the Court with Gael Coakley's earlier testimony which wholly rebuts that submitted by Defendants.[1]

8. Gael Coakley testified that indeed all HTG sales and data went to McLane. HTG received nothing in return. Exhibit "Y" at minutes 48:59-51:42; 1:33:30.

9. Gael Coakley testified that HTG protected its customer data information, it was not made publically available on the HTG website, and that customer pricing was not made available on the HTG website because it was valuable. Exhibit "Y" at minutes 1:02:26-1:04:13.

10. Gael Coakley also testified that there was value to the customer list of HTG. Exhibit "Y" at minute 1:04:39.

11. Despite being keenly and astutely aware of Gael Coakley's May 26, 2015 testimony, Defendants submitted and relied upon completely contrary testimony given by Gael Coakley on March 8, 2016. Defendants did not even address the prior inconsistent testimony but rather presented it to the Court as though the inconsistent testimony did not exist.

12. McLane only ever intended to acquire the Customer Date of HTG, not the entire HTG business. McLane makes a great deal of fuss about the fabrication of HTG's invoices

---

[1] Due to the extraordinary transcription expense, the audio transcript is being provided to this Court. (Per direction of this Court, the audio transcript will be submitted to the Court, along with counsel for Defendants, on a disc. For reference purposes in this response, the audio transcript shall be referred to as Exhibit "Y").

however, Frease specifically decided not to test the sales volume because they were only acquiring the customer list nothing more. The inflation of invoices is a red-herring in this matter; it had no bearing on the acquisition of the Customer Data. McLane was "not buying any physical assets – the balance sheet was not reviewed". See Exhibit "8" at pp. 4-5.

13. Michael Coakley would like this Court to interpret his words to mean something other than what they actually say. The May 20, 2013 email from Michael Coakley to his bosses at McLane actually reads: "Food bank contact list is attached. I exported it from my outlook so it contains all food bank customer emails and some phone numbers." See Exhibit "Q". Nowhere in that email does Michael Coakley mention a website, but rather he refers to his own outlook contacts, he refers to customers not to food banks generally. In his affidavit, Michael Coakley states that Exhibit "Q" represents: "this list of food banks that I had updated one morning while employed by McLane from the feddingamerica.org website." The contrary assertions in his affidavit are disingenuous and call into question the veracity of the balance of the allegations he made under oath.

14. The Trustee's review of the legal issues presented above have been fully developed in the Memorandum of Law in Support of the Trustee's Motion for Summary Judgment Pursuant to Bankruptcy Rule 7056 [ECF Doc. No. 20] and therefore are not being repeated with a further submission herein. Accordingly, the Trustee fully incorporates ECF Doc. No. 20 and the supporting law herein.

WHEREFORE, the Trustee respectfully requests this Court deny Defendants' Motion for Summary Judgment and grant the Trustee's Motion for Summary Judgment and for such other and further relief as to this Court seems just and proper.

Dated:  October 19, 2016

    /s/ Leigh A. Hoffman
Leigh A. Hoffman, Esq.
DEILY & GLASTETTER, LLP
*Attorneys for Chapter 7 Trustee*
8 Thurlow Terrace
Albany, New York 12203
Tel:  (518) 436-0344
Fax:  (518) 436-8273
Email:  lhoffman@deilylawfirm.com